UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

RICARDO DEPADRA GALLOWAY,

        Petitioner,

v.                                                                              Case No. 3:23-cv-364-JEP-MCR

SECRETARY, FLORIDA
DEPARTMENT OF CORRECTIONS,

        Respondent.

_____

## **ORDER**

**THIS CAUSE** is before the Court on Petitioner's pro se Petition for Writ

of Habeas Corpus by a Person in State Custody Under 28 U.S.C. § 2254

("Petition," Doc. 1), Respondent's Response to the Petition (Doc. 9), and

Petitioner's Reply (Doc. 24) thereto.[1] Upon review, no evidentiary proceedings

are warranted in this Court.[2] For the reasons set forth below, the Petition is

denied.

---

[1] For purposes of reference to pleadings and exhibits, the Court will cite the document numbers and page numbers assigned by the Court's electronic docketing system.

[2] "In a habeas corpus proceeding, the burden is on the petitioner to establish the need for an evidentiary hearing." *Jones v. Sec'y, Fla. Dep't of Corrs.*, 834 F.3d 1299, 1318 (11th Cir. 2016) (citing *Chavez v. Sec'y Fla. Dep't of Corrs.*, 647 F.3d 1057, 1060 (11th Cir. 2011)). "In deciding whether to grant an evidentiary hearing, a federal court must consider whether such a hearing could enable an applicant to prove the

## I.   PROCEDURAL HISTORY

On September 14, 2015, the State of Florida filed an information in Duval County Circuit Court case number 2015-CF-7252,[3] charging Ricardo Depadra Galloway ("Galloway") with attempted murder in the second degree (count one), attempted armed robbery (count two), and possession of a firearm by a convicted felon (count three), based on events that occurred on June 7, 2014. (Doc. 9-1 at 40). After a two-day trial, on October 19, 2016, the jury found Galloway guilty as charged on all counts. (*Id.* at 112–13, 146; Doc. 9-2 at 563–64, 573–74). On December 2, 2016, the trial court sentenced Galloway to a term of life in prison as a Habitual Felony Offender ("HFO"), with a thirty-year mandatory minimum as a Prison Releasee Reoffender ("PRR") and a twenty-five-year mandatory minimum for discharging a firearm, as to count one; a term of thirty years in prison as an HFO, with a fifteen-year mandatory minimum as a PRR and a twenty-five-year mandatory minimum for

---

petition's factual allegations, which, if true, would entitle the applicant to federal habeas relief." *Schriro v. Landrigan*, 550 U.S. 465, 474 (2007) (citation omitted). "It follows that if the record refutes the applicant's factual allegations or otherwise precludes habeas relief, a district court is not required to hold an evidentiary hearing." *Id.* The Court finds that "further factual development" is unnecessary. *Turner v. Crosby*, 339 F.3d 1247, 1275 (11th Cir. 2003). Thus, an evidentiary hearing will not be conducted.

[3] The Court takes judicial notice of Petitioner's state court dockets. *See Paez v. Sec'y, Fla. Dep't of Corrs.*, 947 F.3d 649, 651–52 (11th Cir. 2020) (holding that a district court may take judicial notice of online state court docket sheets in ruling on a petition for writ of habeas corpus).

discharging a firearm, as to count two; and a term of twenty-five years in prison as an HFO, with a three-year mandatory minimum for discharging a firearm, as to count three. (Doc. 9-1 at 179–89, 337–39). The same day, the trial court denied Galloway's motion for a new trial. (*Id.* at 190–92, 308). Through counsel, Galloway appealed his convictions and sentences to Florida's First District Court of Appeal ("First DCA"). (*Id.* at 224; Docs. 9-3, 9-4, 9-5). The First DCA per curiam affirmed the convictions without a written opinion on September 20, 2017, *see Galloway v. State*, 234 So. 3d 666 (table) (Fla. 1st DCA 2017), and issued the mandate on October 11, 2017. (Doc. 9-6).

On December 4, 2017,[4] Galloway filed a pro se motion to correct illegal sentence pursuant to Florida Rule of Criminal Procedure 3.800(a), which the trial court dismissed on September 24, 2020. (Doc. 9-7; Doc. 9-8 at 2–4). Meanwhile, on March 30, 2018, Galloway had filed a pro se petition for writ of habeas corpus alleging ineffective assistance of appellate counsel, which the First DCA per curiam "denied on the merits" without a written opinion on May 11, 2018, *see Galloway v. State*, 244 So. 3d 1198 (Fla. 1st DCA 2018), and denied rehearing on June 18, 2018.[5] (Doc. 9-9 at 2–12; Docs. 9-10, 9-11, 9-12).

---

[4] *See Houston v. Lack*, 487 U.S. 266, 276 (1988) (mailbox rule).

[5] According to the docket sheet in case number 1D18-1403, Galloway filed a notice to invoke the discretionary jurisdiction of the Florida Supreme Court on July 20, 2018, which was dismissed on July 25, 2018.

On June 25, 2018, Galloway filed a pro se motion for postconviction relief pursuant to Florida Rule of Criminal Procedure 3.850, raising ten grounds for relief. (Doc. 9-13). Subsequently, the Sichta Firm entered a notice of appearance and moved to stay Galloway's Rule 3.850 proceedings, which the trial court granted on December 5, 2018. (*See* Docs. 396, 398 in No. 2015-CF-7252). Then, the trial court struck the pending Rule 3.850 motions and granted leave to file a single motion. (*See* Doc. 400 in No. 2015-CF-7252). On March 18, 2019, Galloway filed his counseled amended Rule 3.850 motion, raising five grounds for relief. (Doc. 9-14). After holding an evidentiary hearing on May 28, 2021,[6] the trial court denied the amended Rule 3.850 motion on September 1, 2021. (Docs. 9-15, 9-16). The First DCA per curiam affirmed the denial without a written opinion on October 13, 2022, *see Galloway v. State*, 348 So. 3d 494 (table) (Fla. 1st DCA 2022), and issued the mandate on October 31, 2022. (Docs. 9-17, 9-18, 9-19, 9-20). On March 26, 2023, Galloway timely filed his Petition in this Court.[7] (Doc. 1).

---

[6] The State's response to the amended Rule 3.850 motion and the parties' post-hearing briefs are not part of the record in this Court. (*See* Docs. 411, 583, 584, 585 in No. 2015-CF-7252).

[7] Respondent concedes, and this Court finds based on a review of the state court dockets, that this action is timely. (Doc. 9 at 5).

## II.    LEGAL STANDARD

### A.    AEDPA

Pursuant to the Antiterrorism Effective Death Penalty Act ("AEDPA"), a federal court may not grant federal habeas relief with respect to a claim adjudicated on the merits in state court unless the adjudication of the claim:

> (1)    resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2)    resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). The phrase "clearly established Federal law" encompasses only the holdings of the United States Supreme Court "as of the time of the relevant state-court decision." *Williams v. Taylor*, 529 U.S. 362, 412 (2000).

"[S]ection 2254(d)(1) provides two separate bases for reviewing state court decisions; the 'contrary to' and 'unreasonable application' clauses articulate independent considerations a federal court must consider." *Maharaj v. Sec'y for Dep't of Corrs.*, 432 F.3d 1292, 1308 (11th Cir. 2005). The meaning of the clauses was discussed by the Eleventh Circuit Court of Appeals in *Parker v. Head*:

> Under the "contrary to" clause, a federal court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the United States Supreme Court] on a question of law or if the state court decides a case differently than [the United States

Supreme Court] has on a set of materially indistinguishable facts. Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the United States Supreme Court's] decisions but unreasonably applies that principle to the facts of the prisoner's case.

244 F.3d 831, 835 (11th Cir. 2001) (quoting *Williams*, 529 U.S. at 412–13). Even if the federal court concludes that the state court applied federal law incorrectly, habeas relief is appropriate only if that application was "objectively unreasonable."[8] *Id.* (quotation omitted).

Finally, under § 2254(d)(2), a federal court may grant a writ of habeas corpus if the state court's decision "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2). However, the state court's "determination of a factual issue . . . shall be presumed correct," and the habeas petitioner "shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1); *see also Parker*, 244 F.3d at 835–36.

---

[8] In considering the "unreasonable application inquiry," the Court must determine "whether the state court's application of clearly established federal law was objectively unreasonable." *Williams*, 529 U.S. at 409. Whether a state court's decision was an unreasonable application of law must be assessed in light of the record before the state court. *Holland v. Jackson*, 542 U.S. 649, 652 (2004); *see also Bell v. Cone*, 535 U.S. 685, 697 n.4 (2002) (declining to consider evidence not presented to the state court in determining whether the state court's decision was contrary to federal law).

## B.    Exhaustion and Procedural Default

Before bringing a § 2254 habeas action in federal court, a state prisoner must exhaust all state court remedies that are available for challenging his conviction. *See* 28 U.S.C. § 2254(b)(1)(A). To do so, he must "fairly present[]" every issue raised in his federal petition to the state's highest court, either on direct appeal or on collateral review. *Castille v. Peoples*, 489 U.S. 346, 351 (1989) (emphasis omitted). Thus, to properly exhaust their claims, "state prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process," *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999), thereby alerting the appropriate state court to "the federal nature of the claim[s]," *Baldwin v. Reese*, 541 U.S. 27, 29 (2004); *see also Pope v. Rich*, 358 F.3d 852, 854 (11th Cir. 2004) (noting "that *Boerckel* applies to the state collateral review process as well as the direct appeal process").

A state prisoner's failure to properly exhaust available state remedies results in a procedural default, which raises a potential bar to federal habeas review. Under the doctrine of procedural default:

> [A] federal court will not review the merits of claims, including constitutional claims, that a state court declined to hear because the prisoner failed to abide by a state procedural rule. *See, e.g.*, *Coleman v. Thompson*, 501 U.S. 722, 747–748 (1991); *Wainwright v. Sykes*, 433 U.S. 72, 84–85 (1977). A state court's invocation of a procedural rule to deny a prisoner's claims precludes federal

7

review of the claims if, among other requisites, the state procedural rule is a nonfederal ground adequate to support the judgment and the rule is firmly established and consistently followed. *See, e.g., Walker v. Martin*, 562 U.S. 307, 316 (2011); *Beard v. Kindler*, 558 U.S. 53, 60–61 (2009). The doctrine barring procedurally defaulted claims from being heard is not without exceptions. A prisoner may obtain federal review of a defaulted claim by showing cause for the default and prejudice from a violation of federal law. *See Coleman*, 501 U.S. at 750.

*Martinez v. Ryan*, 566 U.S. 1, 9–10 (2012) (internal citations modified).

"To show cause, the petitioner must demonstrate 'some objective factor external to the defense' that impeded his effort to raise the claim properly in state court." *Ward v. Hall*, 592 F.3d 1144, 1157 (11th Cir. 2010) (quoting *Murray v. Carrier*, 477 U.S. 478, 488 (1986)). Once cause is established, "the petitioner also must show actual prejudice from the alleged constitutional violation." *Id.* (citing *Sykes*, 433 U.S. at 84). "[I]n order to show prejudice, a petitioner must demonstrate that 'the errors at trial actually and substantially disadvantaged his defense so that he was denied fundamental fairness.'" *Id.* (quoting *McCoy v. Newsome*, 953 F.2d 1252, 1261 (11th Cir. 1992)).

In the absence of a showing of cause and prejudice, a petitioner may still receive consideration on the merits of a procedurally defaulted claim if he can show that a fundamental miscarriage of justice would occur:

"[I]n an extraordinary case, where a constitutional violation has probably resulted in the conviction of one who is actually innocent, a federal habeas court may grant the writ even in the absence of a showing of cause for the procedural default." *Carrier*, 477 U.S. at

8

> 496. "This exception is exceedingly narrow in scope," however, and requires proof of actual innocence, not just legal innocence. *Johnson v. Alabama*, 256 F.3d 1156, 1171 (11th Cir. 2001).

*Ward*, 592 F.3d at 1157 (internal citations modified). "To meet this standard, a petitioner must 'show that it is more likely than not that no reasonable juror would have convicted him' of the underlying offense." *Johnson*, 256 F.3d at 1171 (quoting *Schlup v. Delo*, 513 U.S. 298, 327 (1995)). Additionally, "'[t]o be credible,' a claim of actual innocence must be based on reliable evidence not presented at trial." *Calderon v. Thompson*, 523 U.S. 538, 559 (1998) (quoting *Schlup*, 513 U.S. at 324). With the rarity of such evidence, in most cases, allegations of actual innocence are ultimately summarily rejected. *Schlup*, 513 U.S. at 324.

## C.   Ineffective Assistance of Counsel

In *Strickland v. Washington*, 466 U.S. 668 (1984), the Supreme Court of the United States established a two-part test for determining whether a convicted person is entitled to relief on the ground that his counsel rendered ineffective assistance: (1) whether counsel's performance was deficient and "fell below an objective standard of reasonableness"; and (2) whether the deficient performance prejudiced the defense. *Id.* at 687–88. A court must adhere to a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance. *Id.* at 689–90. "Thus, a court

deciding an actual ineffectiveness claim must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." *Id*. at 690; *Gates v. Zant*, 863 F.2d 1492, 1497 (11th Cir. 1989).

> As observed by the Eleventh Circuit:

> [The test for ineffective assistance of counsel] has nothing to do with what the best lawyers would have done. Nor is the test even what most good lawyers would have done. We ask only whether some reasonable lawyer at the trial could have acted, in the circumstances, as defense counsel acted at trial. Courts also should at the start presume effectiveness and should always avoid second guessing with the benefit of hindsight. *Strickland* encourages reviewing courts to allow lawyers broad discretion to represent their clients by pursuing their own strategy. We are not interested in grading lawyers' performances; we are interested in whether the adversarial process at trial, in fact, worked adequately.

*White v. Singletary*, 972 F.2d 1218, 1220–21 (11th Cir. 1992) (citation omitted). Under those rules and presumptions, "the cases in which habeas petitioners can properly prevail on the ground of ineffective assistance of counsel are few and far between." *Rogers v. Zant*, 13 F.3d 384, 386 (11th Cir. 1994).

## III.   DISCUSSION

### A.   Ground One

In Ground One, Galloway alleges he was deprived of a fair trial when the trial court allowed the State, over defense counsel's objection, to ask Detective Joseph Stronko on redirect about his post-arrest interview with Galloway,

10

which exceeded the scope of cross-examination. (Doc. 1 at 7; *see also* Doc. 24 at 8–9[9]). Galloway presented this claim as issue one in his direct appeal initial brief, but only in the context of state law. (Doc. 9-3 at 15–17). Galloway made no argument or reference to the United States Constitution or any decision by the United States Supreme Court. (*See id.*) Because he did not fairly present the federal nature of his claim, he deprived the state court of a meaningful opportunity to review the claim. *See Baldwin*, 541 U.S. at 29. Since future attempts to exhaust this claim would be futile, the claim is procedurally defaulted. *Bailey v. Nagle*, 172 F.3d 1299, 1303 (11th Cir. 1999). Therefore, Ground One is denied.

### B.  Ground Two

In Ground Two, Galloway alleges he was deprived of a fair trial when the trial court denied his motions for judgment of acquittal challenging the sufficiency of the evidence as to counts one through three of the information. (Doc. 1 at 9–12; *see also* Doc. 24 at 10–14). Galloway presented this claim as

---

[9] To the extent Galloway attempts to raise new claims in his Reply as to any of the alleged grounds, such claims are not properly before the Court. *See* Rule 2(c), Rules Governing Section 2254 Cases ("The petition must: (1) specify all the grounds for relief available to the petitioner . . . ."); *Herring v. Sec'y, Dep't of Corrs.*, 397 F.3d 1338, 1342 (11th Cir. 2005) ("As we repeatedly have admonished, '[a]rguments raised for the first time in a reply brief are not properly before a reviewing court.'") (collecting cases); *see also Timson v. Sampson*, 518 F.3d 870, 874 (11th Cir. 2008) (finding that a *pro se* litigant abandoned an issue that was not raised in his initial brief as the court does "not address arguments raised for the first time in a *pro se* litigant's reply brief").

11

issue two in his direct appeal initial brief, but only in the context of state law. (Doc. 9-3 at 18–21). Galloway made no argument or reference to the United States Constitution or any decision by the United States Supreme Court. (*See id.*) Because he did not fairly present the federal nature of his claim, he deprived the state court of a meaningful opportunity to review it. *See Baldwin,* 541 U.S. at 29. Since future attempts to exhaust this claim would be futile, the claim is procedurally defaulted. *Bailey,* 172 F.3d at 1303. Therefore, Ground Two is denied.

### C.   Ground Three

In Ground Three, Galloway alleges he was deprived of a fair trial when the trial court allowed the State to introduce his booking photo over defense counsel's objection. (Doc. 1 at 14; *see also* Doc. 24 at 15–16). Galloway presented this claim as issue three in his direct appeal initial brief, but only in the context of state law. (Doc. 9-3 at 22–23). Galloway made no argument or reference to the United States Constitution or any decision by the United States Supreme Court. (*See id.*) Because he did not fairly present the federal nature of his claim, he deprived the state court of a meaningful opportunity to review it. *See Baldwin,* 541 U.S. at 29. Since future attempts to exhaust this claim would be futile, the claim is procedurally defaulted. *Bailey,* 172 F.3d at 1303. Therefore, Ground Three is denied.

## D.   Ground Four

In Ground Four, Galloway alleges his trial counsel was ineffective for failing to file a motion to suppress the State witnesses' out-of-court identifications of Galloway, where the suggestive police procedure led to "an irreparable likelihood of misidentification" and prejudiced the outcome of the proceedings. (Doc. 1 at 16–19; *see also* Doc. 24 at 17–20).

Galloway raised this claim in ground one of his amended Rule 3.850 motion. (Doc. 9-14 at 9–16; *see also* Doc. 9-17 at 25–37). After holding an evidentiary hearing, the trial court denied the claim as follows:

> In Ground One of his motion, [Galloway] argues Defense Counsel should have filed a motion to suppress allegedly improper out-of-court identifications of [Galloway]. [Galloway] maintains the photo lineup procedure that officers used in this case was unduly suggestive and that if only Defense Counsel had filed a motion to suppress, the trial court would have excluded the victims' out-of-court identifications of [Galloway] from evidence.
>
> The First District Court of Appeal has summarized the law governing the admissibility of out-of-court identifications:
>
>> Use of an identification obtained through unnecessarily suggestive procedures violates a defendant's due process rights. *Perry v. New Hampshire*, 565 U.S. 228, 232 (2012). But a suggestive pre-trial identification is admissible if "despite its suggestive aspects, the out-of-court identification possesses certain features of reliability." *Grant v. State*, 390 So. 2d 341, 343 (Fla. 1980) (citing *Manson v. Brathwaite*, 432 U.S. 98, 110 (1977)). The admissibility of an out-of-court identification is controlled by a two-part test that requires the court to

> determine "(1) whether the police used an unnecessarily suggestive procedure to obtain the out-of-court identification; and (2) if so, considering all the circumstances, whether the suggestive procedure gave rise to a substantial likelihood of irreparable misidentification." *Id.*

*Lynch v. State*, 260 So. 3d 1166, 1170 (Fla. 1st DCA 2018).

Here, [Galloway] notes that the victims reported their assailant had a neck tattoo. [Galloway] alleges that of the six men pictured in the photospread that officers presented to the victims, only one had a neck tattoo ([Galloway]). As such, [Galloway] posits that the photo lineup was improperly suggestive, and that Defense Counsel should have moved to exclude the resulting out-of-court identifications from evidence because of the substantial likelihood of irreparable misidentification.

Defense Counsel made these precise misidentification arguments to the jury, as she maintained that the victims' out-of-court identifications carried scant probative value. As part of her argument, Defense Counsel emphasized that [Galloway's] picture was the only one in the lineup that clearly displayed a neck tattoo. She also noted that Heather [McAllister] and Ismael Aviles initially selected the photo of a person who could not have been the shooter. Thus, the jury knew all about the shortcomings of the witness' [sic] out-of-court identifications at the time that it found [Galloway] guilty as charged.

Moreover, at the evidentiary hearing, Defense Counsel testified that she did not file a pre-trial motion to suppress because she did not expect to prevail on such a motion. She did not think the motion was an "obvious slam dunk" legally, in part because [Galloway] was not technically the only member of the photo lineup with a neck tattoo (Defense Counsel noted that one other member of the lineup also had a neck tattoo, although it was not clearly visible). Instead, Defense Counsel thought the better strategy was to present her arguments about the unreliability of the identifications to the jury. She explained that while her arguments about the identifications may not have carried the day

legally on a motion to suppress, she thought she could persuade the jury to effectively discredit the identifications. The Florida Supreme Court has held that such "strategic decisions do not constitute ineffective assistance of counsel if alternative courses have been considered and rejected and counsel's decision was reasonable under the norms of professional conduct." *Occhicone v. State*, 768 So. 2d 1037, 1048 (Fla. 2000). This is in keeping with . . . the *Strickland* standard, which provides that "[j]udicial scrutiny of counsel's performance must be highly deferential." *Strickland*, 466 U.S. at 589.

Defense Counsel provided a reasonable strategic basis for her decision not to file a pre-trial motion to suppress the out-of-court identifications. Therefore, [Galloway's] claim fails to demonstrate deficiency under *Strickland*. As for *Strickland*'s prejudice prong, [Galloway] did not demonstrate that there is a reasonable probability the Court would have granted the motion to suppress had Defense Counsel filed it. *See Whitted v. State*, 992 So. 2d 352, 353 (Fla. 4th DCA 2008) ("Counsel was not ineffective for failing to file a motion sure to be denied."). Furthermore, as the Court noted above, Defense Counsel's efforts throughout the trial and during closing argument ensured the jury knew all about the weaknesses of the out-of-court identifications in this case.

(Doc. 9-16 at 8–10 (record citations omitted)). The First DCA per curiam affirmed the denial of the claim without a written opinion. (Doc. 9-20).

Because the First DCA affirmed without a written opinion, the Court presumes the affirmance was based on the trial court's findings. *See Wilson v. Sellers*, 584 U.S. 122, 125–26 (2018) (holding that where the relevant state court decision on the merits does not provide any rationale for its decision, "the federal court should 'look through' the unexplained decision to the last related state-court decision that does provide a relevant rationale" and "should then

15

presume that the unexplained decision adopted the same reasoning"). As the trial court decided the claim on the merits, the Court addresses it in accordance with the deferential standard for federal court review of state court adjudications. Upon thorough review of the record and the applicable law, the Court concludes that the state court's adjudication of the claim was not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and was not based on an unreasonable determination of the facts in light of the evidence presented. (*See, e.g.*, Doc. 9-15 at 14–19).

Notably, the trial court determined that counsel's decision to attack the witnesses' out-of-court identifications during the trial, rather than in a pre-trial motion to suppress, was strategic. Indeed, trial counsel testified at the evidentiary hearing that she could have filed a pre-trial motion to suppress the witnesses' photo identifications based on the arguments she made at the trial, but "[i]t wasn't a good move to do that." (*Id.* at 17). Counsel explained:

> [T]here are certain scenarios where it's better to put information in front of a jury, in front of six folks who are not involved in the criminal justice system, who have . . . no knowledge of how messed up some things are, and make the argument [at the] trial instead of filing it pretrial when the State has an opportunity to try to clean up any of those mistakes in a hearing.
>
> And, frankly, I wasn't certain that we were going to be meritorious in it, so it wasn't worth putting those arguments and putting all of that information on blast prior. It was a much better trial strategy

16

to attack it [at the] trial in front of people who aren't familiar with photo spreads and how the criminal justice system works and stuff like that.

So it was very much a trial strategy to argue that [at the] trial . . .

There were two people [who] had a tattoo in the photo spreads, so it wasn't an obvious slam dunk from the photo spread and it was better to put it in front of people who were not familiar with the criminal justice system.

(*Id.* at 17–19; *see also id.* at 14–15 ("[F]rankly, there are two [persons in the photo lineup who] have a neck tattoo. But the tattoos don't show up very well on the photo spread at all . . . .")).

As the Eleventh Circuit instructs:

Inquiries into strategic or tactical decisions challenged as ineffective assistance of counsel involve both a factual and a legal component. The question of whether an attorney's actions were actually the product of a tactical or strategic decision is an issue of fact, and a state court's decision concerning that issue is presumptively correct. By contrast, the question of whether the strategic or tactical decision is reasonable enough to fall within the wide range of professional competence is an issue of law not one of fact, so we decide it de novo.

*Provenzano v. Singletary*, 148 F.3d 1327, 1330 (11th Cir. 1998). Here, Galloway has not provided clear and convincing evidence to overcome the trial court's factual determination that counsel's decision was strategic, and, therefore, the Court presumes that determination to be correct. *See* 28 U.S.C. § 2254(e)(1) (stating that "a determination of a factual issue made by a State court shall be presumed to be correct" and the petitioner has "the burden of rebutting the

17

presumption of correctness by clear and convincing evidence"). Moreover, Galloway has failed to demonstrate that no reasonable attorney would have adopted the same strategy as his trial counsel. *See White*, 972 F.2d at 1220 ("The [*Strickland*] test has nothing to do with what the best lawyers would have done. Nor is the test even what most good lawyers would have done. We ask only whether some reasonable lawyer at the trial could have acted, in the circumstances, as defense counsel acted at trial."). "[S]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable; and strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation." *Schoenwetter v. State*, 46 So. 3d 535, 555 (Fla. 2010) (citing *Wiggins v. Smith*, 539 U.S. 510, 521 (2003)). Because Galloway has not shown that his trial counsel's decision was so "patently unreasonable that no competent attorney would have chosen it," counsel's strategic decision is not subject to collateral attack. *Adams v. Wainwright*, 709 F.2d 1443, 1445 (11th Cir. 1983). Therefore, Ground Four is denied.[10]

---

[10] Galloway's claim is based in part on the testimony of Dr. Brian S. Cahill, who opined at the evidentiary hearing that the photo lineup in Galloway's case was biased. (Doc. 9-15 at 73). However, Dr. Cahill acknowledged on cross-examination that all six photographs in the lineup included African-American males with relatively similar, short haircuts; with similar facial characteristics, such as nose and

18

### E.    Ground Five

In Ground Five, Galloway alleges his trial counsel was ineffective for failing to consult and present an eyewitness identification expert either at a suppression hearing or at the trial to support the defense theory of mistaken identity, which prejudiced the outcome of the proceedings. (Doc. 1 at 21–22; *see also* Doc. 24 at 20–32).

Galloway raised this claim in ground four of his amended Rule 3.850 motion. (Doc. 9-14 at 29–35; *see also* Doc. 9-17 at 38–43). The trial court addressed the claim as follows:

> In Ground Four, [Galloway] argues Defense Counsel should have presented an eyewitness identification expert. [Galloway] avers that such an expert would have helped the jury understand the potential shortcomings of eyewitness identification.
>
> The Court notes that failing to retain an expert witness does not *ipso facto* render a lawyer deficient. *See Harrington v. Richter*, 562 U.S. 86, 111 (2011) ("*Strickland* does not enact Newton's third law for the presentation of evidence, requiring for every prosecution expert an equal and opposite expert from the defense."). Furthermore, "a defendant does not establish that his attorney performed deficiently in failing to retain a defense expert when defense counsel 'rigorously challenged the state's expert.'" *Johnson v. State*, 247 So. 3d 689, 696 (Fla. 1st DCA 2018) (quoting *Crain v. State*, 78 So. 3d 1025, 1040 (Fla. 2011)).
>
> Relevant to the specific type of expert that [Galloway] references in Ground Four, the Florida Supreme Court has stated:

---

lip shapes and styles; with similar facial hair; and with "a shadow cast on the necks in most of the pictures, making the neck almost difficult to see." (*Id.* at 80–81).

19

> Expert testimony should be excluded when the facts testified to are of such nature as not to require any special knowledge or experience in order for the jury to form its conclusions. We hold that a jury is fully capable of assessing a witness' ability to perceive and remember, given the assistance of cross-examination and cautionary instructions, without the aid of expert testimony. We find no abuse of discretion in the trial court's refusal to allow this witness to testify about the reliability of eyewitness identification.

*McMullen v. State*, 714 So. 2d 368, 371 (Fla. 1998) (internal quotation omitted).

Thus, while expert testimony on the reliability of eyewitness identification is not *per se* inadmissible, it need not be admitted to establish general eyewitness identification issues and the common factors that could lead to a false identification. *See Pietri v. State*, 935 So. 2d 85, 85–86 (Fla. 5th DCA 2006). Instead, the trial court should only admit such testimony when a particular identification will require "special knowledge" for a jury to evaluate. *See Jones v. State*, 197 So. 3d 1085, 1091 (Fla. 2d DCA 2015); *see also Mills v. Redwing Carriers, Inc.*, 127 So. 2d 453, 456 (Fla. 2d DCA 1961) ("Consequently the opinion of an expert should be excluded where the facts testified to are of a kind that do not require any special knowledge or experience in order to form a conclusion, or are of such character that they may be presumed to be within the common experience of all men moving in ordinary walks of life."). When making that "special knowledge" determination, the trial court should consider certain case-specific factors, including time lapse, witness stress, potential issues with cross-racial identification, unconscious transference, and the presence of weapons. *Jones*, 197 So. 3d at 1091.[11]

---

[11] In *Jones*, the court held that the trial court abused its discretion to exclude the expert's testimony "because of the presence of numerous factors impacting the issue of identification," including: (1) the two-year time lapse between the date of the offense and the date of the identification; (2) the high stress experienced by the witness; (3) the different races of the witness and the suspect; (4) the possibility of unconscious transference; and (5) the fact that the suspect had a weapon during the

At the evidentiary hearing, Defense Counsel testified that she did not think the identification issues in this case were beyond the ken of the jury. Based on the record and the law, the Court agrees. Defense Counsel was not ineffective for failing to present an expert witness who could not have offered admissible testimony. And even if the Court had permitted the hypothetical expert witness to testify, there is no reasonable probability that the testimony [Galloway] describes would have changed the result of his trial.

Finally, during his colloquy with the Court at trial, [Galloway] swore there were no additional witnesses he wished to call or evidence he wished to present. Accepting [Galloway's] allegations in Ground Four [would] contradict his sworn assertions to the Court. [Galloway] may not obtain postconviction relief in that manner. *See Kelley v. State*, 109 So. 3d 811, 812–13 (Fla. 1st DCA 2013) ("A rule 3.850 motion cannot be used to go behind representations the defendant made to the trial court, and the court may summarily deny postconviction claims that are refuted by such representations."); *Henry v. State*, 920 So. 2d 1245, 1246 (Fla. 5th DCA 2006) ("Defendants are bound by the statements made by them under oath . . . ."). For these reasons, the Court denies Ground Four of [Galloway's] motion.

(Doc. 9-16 at 11–13 (record citations omitted)). The First DCA per curiam

affirmed the denial of the claim without a written opinion. (Doc. 9-20).

The Court presumes the affirmance was based on the trial court's

findings and addresses the claim in accordance with the deferential standard

for federal court review of state court adjudications. *See Wilson*, 584 U.S. at

---

entire incident. 197 So. 3d at 1091–93. However, the court in *Jones* declined to decide "whether the presence of a lesser number of factors [would] compel[] the same outcome," and ultimately concluded that the trial court's error in excluding the expert's testimony was harmless considering other evidence of defendant's guilt. *Id.* at 1093–94.

125–26. At the evidentiary hearing, trial counsel testified that she did not consult with or present testimony from an eyewitness identification expert because she believed the factors affecting eyewitness identification reliability, such as those listed in the jury instructions (*see* Doc. 9-1 at 136; Doc. 9-15 at 15), were "all fairly common sense" and within the average juror's understanding.[12] (Doc. 9-15 at 20). The trial court agreed that expert testimony on the reliability of eyewitness identification was unnecessary and would have been inadmissible in Galloway's case. *See McMullen*, 714 So. 2d at 372 (reaffirming the court's prior holding that "the admissibility of expert testimony regarding the reliability of eyewitness testimony is left to the sound discretion of the trial judge" and that "the trial judge, in considering the admissibility of this type of evidence, must evaluate whether the evidence will assist the trier of fact in understanding the evidence or in determining a fact

---

[12] Galloway's expert at the evidentiary hearing, Dr. Cahill, conceded that trial counsel had presented testimony and argument to the jury about some of the factors affecting eyewitness identification. (*See* Doc. 9-2 at 259–60, 275–80; Doc. 9-15 at 16, 18–19, 56–57). In any event, from the five factors listed in *Jones*, 197 So. 3d at 1091, it appears that only the second and the third factors could have impacted the witnesses' identification in this case, because the fourth factor seems to be inapplicable, the time lapse between the date of the offense and the date of the identification was only five days, and the perpetrator's weapon was hidden from the witnesses' view until he used it near the end of the incident. (*See* Doc. 9-2 at 189–97, 202–05, 215, 229–36, 240–41, 248–53, 257–60, 265–67, 269, 271–75, 279–80, 300–04, 309, 360–66).

in issue"[13]); *see also United States v. Holloway*, 971 F.2d 675, 679 (11th Cir. 1992) (finding that in accordance with Eleventh Circuit precedent, the trial court did not abuse its discretion in refusing to admit the testimony of an expert in eyewitness identification). Upon thorough review of the record and the applicable law, the Court concludes that the trial court's adjudication of the claim was not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and was not based on an unreasonable determination of the facts in light of the evidence presented. Therefore, Ground Five is denied.

## F.     Ground Six

In Ground Six, Galloway alleges his trial counsel was ineffective for failing to object to the testimony of Thomas Howell and Emily Varan, which bolstered the reliability of the inculpatory forensic evidence, prejudicing the outcome of the proceedings. (Doc. 1 at 25–29; *see also* Doc. 24 at 32–37). Specifically, Galloway argues that counsel should have objected to Mr. Howell's testimony below:

[Cross-examination:]

---

[13] In so holding, the court rejected "the modern trend" that defendant "urge[d] [the court] to follow" despite "the overwhelming view to the contrary." *McMullen*, 714 So. 2d at 372.

23

Q    And you said that you use a magnifying glass and you go back and forth. So[,] the match is your personal judgment as to whether things line up, right?

A    Well, I try to get both the ink print and latent print side by side. That way[,] [I] put the magnifier over the top of both[,] and then look for point one and go to point two. I look at it myself. And then[,] I also give it to another examiner to be verified, and what that means, they agree with my results.

Q    Okay. But it's your call, right, if it's a match? It's not something that's done by someone else or by [a] computer program? It's something that you decide, right?

A    The first identification is done by me, yes.

***

[Redirect:]

Q    As you stated, sir, the first identification is done by you, correct?

A    Yes, sir, it is.

Q    And then[,] in order for your opinion to be published, it has to be verified by a second person?

A    That is correct.

Q    So it's not just your personal judgment, it's also another person double-checking you as well, correct?

A    Yes, . . . sir.
. . . .

Q    Final question. As you stated before, all your prints here were verified, otherwise you would not have published your opinion, correct?

24

A       That is correct.

(Doc. 9-2 at 397–400).[14]

In addition, Galloway argues that trial counsel should have objected to Ms. Varan's testimony below:

> Q       Do DNA analysts in the Jacksonville lab undergo proficiency testing?
>
> A       Yes.
>
> Q       What is proficiency testing?
>
> A       Proficiency testing is another requirement that was decided in the 90s in order to do DNA testing and to make sure everyone was competent. A DNA analyst was required to undergo proficiency testing twice a year. So[,] basically every six months[,] I am given an independent test from a company that provides them and it's casework samples I receive in the lab on a normal basis. It's a set of unknowns and a set of known standards[,] and I perform DNA testing on these items, get my results, write up a report[,] and submit it for technical and administrative review[,] and then it goes to the private company that lets me know that I passed.
>
> Q       And you stated you yourself have done those tests, correct?
>
> A       Yes.

---

[14] Galloway also points out that during closing arguments, the State improperly relied on Mr. Howell's verification testimony, as follows:
> [Mr. Howell] compares over ten points on a fingerprint to make sure they're the exact same distance away from each other, the same length, the same spiral. And if even one of those points is off, not him. [Mr. Howell] won't make that determination. The determinations are also verified by another person and he won't even release those results unless they're verified.

(Doc. 9-2 at 503–04).

Q      And approximately how many DNA tests have you performed in your 20 plus years with the Florida Department of Law Enforcement?

A      It would be in the thousands. I don't have an exact number, but it would be safe to say it's in the thousands.

Q      And are your examinations and results reviewed in every case?

A      Every case. My data that I compile is reviewed by one analyst to make sure they agree with my information. Once I write up a report and submit that[,] it's reviewed by another qualified analyst in the section[—]technically reviewed that all my documentation is in the file[,] [and it is] correct and checked[—]and then it goes through another set of eyes, the administrative review, which is a supervisor and we have two in our sections [sic], because our section is pretty large. One of them has to review [it] to release it for it to go out of the lab.

(*Id.* at 411–12).

Galloway raised this claim in ground two of his amended Rule 3.850 motion. (Doc. 9-14 at 17–22; *see also* Doc. 9-17 at 44–51). At the evidentiary hearing, Galloway's trial counsel testified in pertinent part as follows:

Q      So did you want [Mr. Howell] to testify that another analyst had confirmed his result?

A      No, ma'am.

Q      Did you object to that answer?

A      No. . . . [W]hen you object to a witness that you're currently crossing, it looks like you don't have control of that witness, and I did not want to do that. Mr. Howell's credentials were very poor, and I wanted to make it look like I was in complete control of Mr. Howell and his pitiful credentials. . . .

Q    Did . . . the confirmation analyst testify in Mr. Galloway's trial?

A    No, ma'am.

Q    Are you familiar with the line of Florida cases indicating that it's improper for an expert to testify about what another non-testifying expert -- or that another non-testifying expert verified the result?

A    I am now.

Q    Were you in 2015?

A    Not that I remember.

Q    And does this pose a confrontation clause issue?

A    Based on how that played out, I would argue that that's actually not hearsay. . . .

***

Q    . . . Did . . . the defense object to [Ms. Varan's] testimony?

A    No, ma'am, I did not. And Mr. Gropper was crossing this witness.

Q    Did the witness' [sic] testimony that their findings had been confirmed by another analyst help your case?

A    . . . With the information that we had regarding Mr. Galloway's case, we have used the fact that the DNA analyst was credentialed and that the lab was credentialed to help attack the fingerprint and the core credentials of how the fingerprint process works. . . . And we really wanted to highlight that it's just some guy with a little bit of training from a long time ago looking at it with a magnifying glass. So it wouldn't have been something we

27

would have objected to because we were trying to use that to help discredit the fingerprint.

Q     . . . Can you think of any strategic reason for not objecting to the FDLE analyst's testimony, that her work was reviewed by at least one other qualified analyst?

A     Yes, because we were trying to build up her credentials to attack Mr. Howell's lack of credentials. We were using one against the other. Which [sic] I know we're not going on the expert for the fingerprint, which was the same reason why we wouldn't have gotten a fingerprint expert. We did not want to lend any more credibility to the fingerprint.

(Doc. 9-15 at 25–29).

With the benefit of the evidentiary hearing, the trial court addressed the

claim as follows:

In Ground Two, [Galloway] claims Defense Counsel should have objected when the State's fingerprint and DNA experts bolstered their own testimony. [Galloway] takes issue with the portions of testimony in which these experts noted that, for their opinions to be published, a second person within their organization had to verify their conclusions.

At the evidentiary hearing, Defense Counsel explained that she did not object to the portions of the testimony at issue because she was focused on attacking the State's fingerprint and DNA experts in other ways. Specifically, she attacked the fingerprint expert's credentials, process, and findings[,] and she objected to his designation as an expert witness. Likewise, her co-counsel attacked the DNA expert's process and findings. Defense Counsel believed she succeeded in illuminating the weaknesses in the experts' testimony. Defense Counsel's hearing testimony demonstrated a reasonable strategic basis for not objecting in the manner that [Galloway] now advocates.

> More importantly, even if Defense Counsel should have objected to the testimony at issue, the Court finds there is no reasonable probability that the outcome of [Galloway's] trial turned on that testimony. Indeed, the truly inculpatory portions of the experts' testimony were their ultimate conclusions about the presence of [Galloway's] DNA on the crime scene cigarette and his fingerprints on [Pass's] car (not their comments about a laboratory peer review process). Because there is no reasonable probability that Defense Counsel's failure to object changed the result of [Galloway's] trial, [Galloway] cannot demonstrate the prejudice that *Strickland* demands. As such, the Court denies Ground Two of [Galloway's] motion.

(Doc. 9-16 at 10–11 (record citations omitted)). The First DCA per curiam affirmed the denial of the claim without a written opinion. (Doc. 9-20).

The Court addresses this claim in accordance with the deferential standard for federal court review of state court adjudications. Upon thorough review of the record and the applicable law, the Court concludes that the trial court's adjudication of the claim was not contrary to or an unreasonable application of *Strickland,* and was not based on an unreasonable determination of the facts in light of the evidence presented. (*See, e.g.*, Doc. 9-2 at 381–84, 391–98, 400–01, 425–36, 517–20). As the trial court found, there was no reasonable probability that but for counsel's errors, the result of the proceeding would have been different. *See Paul v. State*, 407 So. 3d 468, 482 (Fla. 4th DCA 2025) (finding that "[t]he DNA expert's bolstering of her testimony by mentioning a peer review was a minor blip in the trial" where defense counsel did not contest that defendant's DNA was found on the firearm

and instead "argued its insignificance by suggesting that it did not prove [defendant] was the shooter," and where three eyewitnesses identified defendant as the shooter, which distinguished the case from *Miller v. State*, 127 So. 3d 580, 586 (Fla. 4th DCA 2012), in which "the handwriting experts' testimony was essentially the only evidence tying the defendant to the scene of the crime"). Therefore, Ground Six is denied.

### G.    Ground Seven

In Ground Seven, Galloway alleges that the cumulative effect of trial counsel's errors deprived him of a fair trial. (Doc. 1 at 32; *see also* Doc. 24 at 37–39). Galloway raised this claim as ground five in his amended Rule 3.850 motion. (Doc. 9-14 at 35–36; *see also* Doc. 9-17 at 51–52). The trial court denied the claim as follows:

> In Ground Five, [Galloway] claims cumulative error. "Claims of cumulative error do not warrant relief where each individual claim of error is either 'meritless, procedurally barred, or [does] not meet the *Strickland* standard for ineffective assistance of counsel.'" *Schoenwetter*, 46 So. 3d at 562 (quoting *Israel v. State*, 985 So. 2d 510, 520 (Fla. 2008)). Because [Galloway's] previous claims do not meet the *Strickland* standard for ineffective assistance of counsel, [Galloway's] claim of cumulative error does not warrant relief. Accordingly, the Court denies Ground Five of [Galloway's] motion.

(Doc. 9-16 at 13–14 (internal citations modified)). The First DCA per curiam affirmed the denial of the claim without a written opinion. (Doc. 9-20).

30

The Court addresses this claim in accordance with the deferential standard for federal court review of state court adjudications. Upon thorough review of the record and the applicable law, the Court finds that the state court's decision to deny Galloway's claim was neither contrary to nor an unreasonable application of federal law, and it was not based on an unreasonable determination of the facts given the evidence presented to the state court. *See* 28 U.S.C. § 2254(d).

Nevertheless, even if the state court's adjudication were not entitled to deference, this claim still must be denied for the reasons that follow. As the United States Supreme Court has not yet held that distinct constitutional claims can be cumulated to grant habeas relief, the judgment of the state court cannot contravene § 2254(d). *See, e.g. Wright v. Van Patten*, 552 U.S. 120, 126 (2008) ("Because our cases give no clear answer to the question presented . . . , it cannot be said that the state court unreasonabl[y] appli[ed] clearly established Federal law." (internal quotation marks and citations omitted)). However, even if the claim of cumulative error were cognizable for federal habeas review, it must still be denied because each individual claim that Galloway raises is "either meritless, procedurally barred, or [does] not meet the *Strickland* standard for ineffective assistance of counsel." *Schoenwetter*, 46 So. 3d at 562; *see also Morris v. Sec'y, Dep't of Corrs.*, 677 F.3d 1117, 1132 n.3

31

(11th Cir. 2012) ("We need not determine today whether, under the current state of Supreme Court precedent, cumulative error claims reviewed through the lens of AEDPA can ever succeed in showing that the state court's decision on the merits was contrary to or an unreasonable application of clearly established law. For our purposes, it is enough to say that Morris's cumulative error claim clearly fails in light of the absence of any individual errors to accumulate."). Therefore, Ground Seven is denied.

Accordingly, it is **ORDERED** and **ADJUDGED** as follows:

1.     The Petition (Doc. 1) is **DENIED** and this action is **DISMISSED WITH PREJUDICE**.

2.     The Clerk of the Court shall enter judgment dismissing this action with prejudice, terminate any pending motions, and close the file.

3.     If Petitioner appeals this Order, the Court denies a certificate of appealability.[15] Because the Court has determined that a certificate of appealability is not warranted, the Clerk of the Court shall terminate from the

---

[15] The court should issue a certificate of appealability only if a petitioner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To make this substantial showing, a petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," *Tennard v. Dretke,* 542 U.S. 274, 282 (2004) (quoting *Slack v. McDaniel,* 529 U.S. 473, 484 (2000)), or that "the issues presented were 'adequate to deserve encouragement to proceed further,'" *Miller–El v. Cockrell,* 537 U.S. 322, 335–36 (2003) (quoting *Barefoot v. Estelle,* 463 U.S. 880, 893 n.4 (1983)). Upon due consideration of the record as a whole, this Court denies a certificate of appealability.

32

pending motions report any motion to proceed on appeal as a pauper that may be filed in this case. Such termination shall serve as a denial of the motion.

**DONE AND ORDERED** at Jacksonville, Florida, this 9th day of February, 2026.

_____
JORDAN E. PRATT
UNITED STATES DISTRICT JUDGE

Jax-11 1/5
c:
Ricardo Depadra Galloway, #125823
Counsel of Record